UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 15-23343-CIV-MORENO

RICHARD MASSA,

       Plaintiff,

vs.

THE SCHOOL BOARD OF MIAMI-DADE
COUNTY,

       Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANT'S MOTION IN LIMINE

Richard Massa, a teacher, brings this First Amendment retaliation case under 42 U.S.C. § 1983 against his employer, the School Board of Miami-Dade County. Massa alleges that the School Board retaliated against him with a series of adverse employment actions after he: (1) reported concerns of grade inflation misconduct against his school principal, and (2) appeared to testify at administrative retaliation hearings on behalf of other School Board employees.

This cause comes before the Court upon the School Board's motion for summary judgment, which was referred to Magistrate Judge Turnoff for a report and recommendation. Judge Turnoff recommends denying summary judgment. Both parties filed objections.

The School Board argues that: (1) Massa did not suffer an adverse employment action, and even if he did, he has provided insufficient evidence of pretext to rebut the legitimate nondiscriminatory reasons for those actions; and (2) even if Massa can prove retaliation, the evidence is insufficient to prove that the School Board has an unofficial custom or policy of unconstitutional retaliation.

The Court has reviewed *de novo* the motion, response, reply, and objections. Additionally, the parties raised some of their briefed arguments at oral argument on October 30, 2017. As explained below, the School Board's motion for summary judgment is **DENIED**. However, the Court also excludes certain witnesses from testifying about the School Board's alleged custom and policy of unconstitutional retaliation. Accordingly, the School Board's motion *in limine* to strike witnesses is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

### A.    Facts

Construing the record in the light most favorable to Massa, the facts are as follows. Massa has worked for the School Board continuously for approximately 36 years, serving as a highly effective teacher of severely handicapped students. He is still currently employed by the School Board. During the relevant time period in this case, he worked at Neva King Cooper Educational Center, a school serving about 120 students ranging from ages 3-22, all of whom receive special education services because of profound intellectual disabilities.

### 1.    *Massa Reports Alleged Misconduct and Testifies in Other Retaliation Proceedings*

In early March 2013, fellow teacher Luz Morales told Massa that she had been threatened with a poor evaluation by Neva King Cooper's recently appointed principal, Dr. Tracy Roos, unless her students were retested and given higher scores on the Florida Alternate Assessment Test. In early April 2013, Massa met with school administration on Morales' behalf and expressed Morales' concern that she felt pressured to give students favorable test scores that they had not earned. In the ensuing months, Massa and fellow teacher Tebelio Diaz were approached by several other teachers with similar stories. In December 2013, Massa and Diaz wrote a letter

to Commissioner Pam Stewart of the Florida Department of Education alleging that Principal Roos was pressuring teachers to inflate students' grades.

Around the same time, in January and February 2014, the Division of Administrative Hearings conducted an unrelated hearing pertaining to allegations that the School Board had violated a Florida statute by allegedly retaliating against former Neva King Cooper principal, Dr. Alberto Fernandez, and two other employees—then-Assistant Principal Henny Cristobol and Patricia Ramirez—who had tried to organize a charter school conversion at Neva King Cooper. Massa testified on behalf of Dr. Fernandez, Cristobol, and Ramirez in that hearing. The administrative law judge found that the School Board had indeed retaliated against the employees.

On February 22, 2014, Massa and Diaz filed a complaint with the Florida Department of Education Inspector General re-alleging grading improprieties against Principal Roos, and Massa met with a special agent from the Office. Massa and Diaz also sent a copy of the complaint to Miami-Dade County Public Schools Superintendent Alberto Carvalho. A few weeks later, on March 9, 2004, Principal Roos angrily approached Massa after finding out about the investigation. Four days after this encounter, Massa met with an investigator for the Miami-Dade County Public Schools Civilian Investigative Unit about the same allegations. The Civilian Investigative Unit eventually determined that the allegations against Principal Roos were unfounded.[1]

---

[1] Massa disputes the accuracy and credibility of the Civilian Investigative Unit's investigation. Indeed, Principal Roos published a document titled "We are Proud Again" which showed a 51% increase in reading gains between 2013 and 2014. Further, an administrative hearing officer has questioned the particular investigator's credibility in other investigative actions, including the investigation into Dr. Fernandez, Cristobol, and Ramirez.

2. ***First Alleged Retaliatory Actions***

a. <u>Performance Evaluation</u>

On May 27, 2014, Principal Roos gave Massa a performance evaluation with eight standards of performance measurement. For several of the observational standards, Principal Roos rated Massa as "effective." In prior years, other principals had rated Massa as "highly effective" in the same categories. Irritated, Massa met with Principal Roos about the evaluations. During this meeting, Principal Roos told Massa: "You know why you did not get any 'highly effective' ratings; you know what's been going on." But, Principal Roos then changed one or two of the categories from "effective" to "highly effective," also claiming that she had not entered the "effective" scores, and that her computer must have been hacked by someone else. Massa still was dissatisfied with the overall evaluation, but it did not materially impact his compensation or any other terms and conditions of his employment.

b. <u>Reassignment of Classroom Personnel and Students</u>

In August 2014, at the start of the new school year, Assistant Principal Alician Fernandez and Principal Roos reassigned several paraprofessionals and students to different classrooms at Neva King Cooper, including Massa's paraprofessional. Massa was assigned an inexperienced paraprofessional and a new group of students with severe behavioral disorders and violent tendencies. Principal Roos and Assistant Principal Fernandez believed the changes would better meet the students' needs.

3. ***Massa Prepares to Testify Again***

On January 14, 2015, Massa was subpoenaed to testify at a disciplinary administrative hearing on behalf of Morales, the teacher who had originally raised concerns with Principal Roos' alleged grade inflation. Morales had been disciplined by the School Board for failing to properly supervise a disabled student during community-based instruction. Principal Roos saw

Massa waiting in the hall to testify, but Massa never was called to give testimony and did not participate in the hearing in any way.

### 4. *Continued Alleged Retaliatory Actions*

#### a. Testing Incident

In February 2015, Massa attended a Florida Alternate Assessment training session conducted by Assistant Principal Fernandez. In March 2015, Massa administered a test to a student. Approximately one-third of the way through the exam, Massa noticed that the test booklet contained "X" and "O" markings. After the test, Massa returned the testing materials to Assistant Principal Fernandez, who also served as the school's testing chairperson. Massa told Assistant Principal Fernandez about the marks in the response booklet. Under Miami-Dade County Public Schools Standards, Guidelines, and Procedures for Test Administration and Test Security, the markings were a testing irregularity, and Massa should have immediately sought Assistant Principal Fernandez's assistance. Because Massa did not immediately report the markings, but instead finished administering the test, Assistant Principal Fernandez reported the alleged breach in procedure to the appropriate Miami-Dade County Public Schools authorities. Ultimately, the Civilian Investigative Unit determined that Massa had violated testing procedures. For the infraction, Massa received a written reprimand on his permanent record. But, it did not affect his pay or any other terms and conditions of his employment.

#### b. Choking Incidents, Bathroom Incident, and Summer Employment

Between February and April 2015, there were three incidents of students choking on food in Massa's classroom. Concerned, Principal Roos called the incidents in to the Miami-Dade

County Public Schools Office of Professional Standards.[2] The Office instructed Principal Roos to perform an administrative review of the incidents. After her own investigation, Principal Roos determined that there was no probable cause that Massa had violated any School Board policies, and Massa was not disciplined in any way.

The choking incidents also were reported to the Department of Children and Families, as required by statute and School Board policy. In April 2015, a Department investigator visited Neva King Cooper and conducted a separate investigation. Like Principal Roos, that investigator also found no wrongdoing. However, during the investigation, one of the paraprofessionals in Massa's classroom shared that Massa had been taking one of the male students into the bathroom with him. Indeed, Massa had informed Principal Roos in October 2014 that his practice was to take this particularly aggressive student into the bathroom with him because Massa's paraprofessional was afraid of the student and could not handle him. Massa's practice was to have the student stand directly behind him against the wall, shielding the urinal from the student's view. The investigator notified Principal Roos, and also advised that the School Board investigate further. Principal Roos alerted the Office of Professional Standards.

In May 2015, school police initiated an investigation. Miami-Dade County Public School policy mandates that employees under investigation are not to be hired for extra summer employment assignments. Indeed, the governing Summer Implementation Document stated: "Any personnel in a pending investigative status or on a performance improvement plan are not eligible for summer employment." As a result, Principal Roos did not hire Massa for summer school in 2015, and Massa missed out on the extra compensation. The school police

_____

[2] In a letter to Massa, Principal Roos falsely alleged that two of the three students had been transported to the hospital when, in fact, none of the three were brought to the hospital. Principal Roos admits that this was a misunderstanding.

investigation eventually uncovered no wrongdoing and Massa was not disciplined in any way. Principal Roos hired Massa for 2016 summer employment.

c. Massa's Transfer is Denied

In August 2016, Massa attempted to transfer from Neva King Cooper to work under former principal Dr. Fernandez again. His transfer request was briefly approved, but was then disapproved by "much higher authority."

## B. Procedural History

On August 7, 2015, Massa sued the School Board in state court. The School Board removed the case to this Court. On March 15, 2016, Massa filed his Second Amended Complaint, which is now the operative complaint. The School Board moved for summary judgment, and this Court referred the motion to United States Magistrate Judge William C. Turnoff. On August 17, 2017, Magistrate Judge Turnoff issued a Report and Recommendation that recommends denying summary judgment. Both sides filed objections, which this Court now reviews *de novo*.

## II. LEGAL STANDARD

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The nonmoving party may not simply rest upon mere allegations or denials of the pleadings, but must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmovant must present more than a scintilla of evidence in support of its position. A jury must be reasonably able to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). In deciding a summary

judgment motion, the Court must view the facts in the light most favorable to the nonmoving party. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

III.  **ANALYSIS**

There are two main issues before the Court. First, whether there has been retaliatory action against Massa. Second, if there has been retaliatory action, whether the School Board had an unofficial custom or policy of unconstitutional retaliation. Massa must create a genuine dispute of material fact as to both issues.

A.  **Retaliation Against Massa**

To establish a *prima facie* retaliation claim, Massa must show:  (1) that he engaged in statutorily protected conduct; (2) that he suffered adverse employment action; and (3) that there is "some causal relation" between the two events. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010). Here, there is no dispute that Massa's reporting of alleged grade inflation and his testimony in other administrative hearings qualify as protected conduct. Nor is there a dispute that Massa has presented sufficient evidence to show a causal connection. *See Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985) (to establish causal connection, plaintiff need only show "that the protected activity and the adverse action were not wholly unrelated."). Thus, to determine if Massa has provided sufficient evidence to establish a *prima facie* claim, the Court need only analyze whether Massa suffered an adverse employment action.

But first, the Court must determine the proper evidentiary burden. In this Circuit, the evidentiary burden is the same for both a Section 1983 case and a Title VII case. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209 (11th Cir. 2008). The Supreme Court "has made clear that a plaintiff can prove disparate treatment either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-

-8-

shifting framework set forth in *McDonnell Douglas*." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015). Here, Massa argues that he has provided direct evidence of retaliation. The School Board responds that Massa relies only on circumstantial evidence, and thus, the *McDonnell Douglas* burden-shifting framework applies.

Direct evidence is "evidence, which if believed, proves [the] existence of fact in issue *without inference or presumption*." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987) (emphasis in original); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) ("only the most blatant remarks, whose intent could mean nothing other than to discriminate" constitute direct evidence). Here, Massa argues that this case involves both circumstantial and direct evidence of the School Board's retaliatory motive. The purported direct evidence includes: (1) Principal Roos' angry confrontation with Massa on March 9, 2014, following Massa's reporting of the alleged misconduct related to grade inflation; and (2) Principal Roos' statement to Massa in explaining the performance evaluation: "You know why you did not get any 'highly effective' ratings; you know what's been going on."

Principal Roos' angry confrontation with Massa is clearly circumstantial evidence of retaliation. It was not coupled with any adverse action and there is no evidence that Principal Roos said anything during the confrontation that suggested he would retaliate. However, Principal Roos' statement is a closer call. But, a juror still must make an inference or a presumption to believe that the statement proves retaliation. Thus, although the statement strongly suggests a retaliatory motive, it does not rise to the level of direct evidence.

Because Massa has not offered direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. Thus, if Massa establishes a *prima facie* case, the burden shifts to the School Board "to articulate some legitimate, non-discriminatory reason" for the

alleged retaliatory action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the School Board articulates such reasons, Massa then has an opportunity to prove that the legitimate reasons offered were not its true reasons, but were pretext. *See Young*, 135 S. Ct. at 1345 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

1.    ***Adverse Employment Action***

The School Board argues that Massa has not produced sufficient evidence of any adverse employment action. The Court disagrees. Although not all actions Massa complains of seem adverse, he has provided sufficient evidence to find at least one.

The test and evidentiary burdens for establishing retaliation under Section 1983 are the same as those used in Title VII cases. *Arrington v. Cobb Cnty.*, 139 F. 3d 865, 873 (11th Cir. 1998). To prove an adverse employment action under Title VII, an employee must show, *inter alia*, a serious and material change in the terms, conditions, or privileges of employment. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). An employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. *Id.*; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (question for First Amendment liability is whether a reasonable person in plaintiff's position would consider the actions of defendant materially adverse.). Thus, whether an action against Massa is materially adverse depends upon the circumstances of this case, and should be judged from the perspective of a reasonable person in Massa's position.

Here, Massa claims a sequence of retaliation spanning about one year and involving six separate adverse actions:

- **Principal Roos Downgrades Massa's Performance Evaluation**. In May 2014, Principal Roos gave Massa a performance evaluation that was downgraded in every category to "effective" instead of "highly effective."

However, later, Principal Roos changed one or two of the categories to "highly effective." Massa had requested the changes only "for righteous reasons" and the evaluation in no way affected his pay or terms of employment.

- **Principal Roos Reassigns Massa's Classroom Personnel with an Inexperienced Paraprofessional and Difficult Students**. In August 2014, Principal Roos reassigned Massa's experienced paraprofessional to another classroom and replaced her with a relatively inexperienced paraprofessional. At the same time, Principal Roos assigned Massa a new group of students with severe behavioral disorders and violent tendencies.

- **Massa Receives a Written Reprimand for Violating Testing Procedures**. In March 2015, Assistant Principal Fernandez reported Massa to Miami-Dade County Public School authorities for an alleged breach of procedure after testing irregularities. Ultimately, the Civilian Investigative Unit found that Massa violated testing procedures. For the infraction, Massa received a written reprimand on his record, which did not affect his pay or any other terms and conditions of his employment.

- **Principal Roos Investigates Massa for Neglect of Students**. In April 2015, following three incidents of students choking on food in Massa's classroom, Principal Roos called the incidents in to the Miami-Dade County Public Schools Office of Professional Standards. Principal Roos was instructed to perform an administrative review of the incidents. After her own investigation, Principal Roos determined that there was no probable cause that Massa had violated any School Board policy. Massa was not disciplined in any way. The choking incidents were also reported to the Department of Children and Families, as required by statute and School Board policy. The Department conducted its own investigation and also found no wrongdoing.

- **Principal Roos Investigates Massa for Sexual Impropriety With a Student**. During the Department of Children and Families' investigation into the choking incident, one of the paraprofessionals in Massa's classroom advised the investigator that Massa had been taking one of the male students into the bathroom with him. Indeed, Massa had informed Principal Roos in October 2014 that his practice was to take this particularly aggressive student into the bathroom with him because Massa's paraprofessional was afraid of the student and could not handle him. Massa's practice was to have the student stand directly behind him against the wall, shielding the urinal from the student's view. The investigator notified Principal Roos and advised that the School Board investigate further. Principal Roos alerted the Office of Professional Standards. In May 2015, school police initiated an investigation into the situation. The investigation eventually uncovered no wrongdoing and Massa was not disciplined in any way.

- **Principal Roos Denies Massa Summer Employment in 2015**. Miami-Dade County Public School policy mandates that employees under investigation are not to be hired for extra summer employment assignments. Indeed, the governing Summer Implementation Document stated: "Any personnel in a pending investigative status or on a performance improvement plan are not eligible for summer employment." Because of the pending bathroom investigation, Principal Roos did not hire Massa for summer school in 2015, and Massa missed out on the extra compensation. In 2016, Massa was hired for summer employment.

Of these six actions, two are not adverse as a matter of law. The two separate investigations into choking incidents and another investigation into potential sexual impropriety all resulted in findings of no wrongdoing, and Massa faced no disciplinary action. No reasonable juror could find that legitimate investigations, standing alone, were materially adverse to Massa's employment, particularly where the investigations uncovered no wrongdoing and Massa was not disciplined.

However, evaluating the evidence in the light most favorable to Massa, a reasonable juror could find that the other four actions were adverse. The Court doubts that an evaluation downgraded to "effective," reassignment of paraprofessionals and students, or written reprimands—standing alone—rises to a level of materially adverse actions that would dissuade a reasonable person from reporting and testifying in the way that Massa did here. However, a reasonable teacher could find that the cumulative actions were materially adverse. Further, a reasonable teacher likely would find that losing a summer employment opportunity was materially adverse as there are direct financial consequences. Thus, Massa has set forth sufficient evidence to have a jury decide whether Massa suffered a materially adverse action.[3]

---

[3] The Court will not permit the jury to hear testimony regarding the investigations into the choking incidents and potential sexual impropriety as the investigations were not adverse employment actions as a matter of law.

2.   ***Legitimate Nondiscriminatory Reasons***

As stated above, If Massa establishes a *prima facie* case, the burden shifts to the School Board "to articulate some legitimate, non-discriminatory reason" for the alleged retaliatory action. *See McDonnell Douglas*, 411 U.S. at 802. However, the School Board need not persuade the court that it was actually motivated by the proffered reasons; it is sufficient if the School Board's evidence raises a genuine issue of fact as to whether it discriminated against Massa. *See Burdine*, 450 U.S. at 253.

The Report and Recommendation found that "the School Board has ably set forth its reasons for each and every action taken." This Court agrees. First, the difference between a rating of "effective" and "highly effective" is a subjective matter that may differ from one principal to the next. Second, Principal Roos and Assistant Principal Fernandez changed the staffing in several classrooms at the beginning of the 2015-16 school year to—in their opinions—better accommodate the students and the school as a whole. Whether Massa agreed with the decision, or even if it made his job a bit more difficult, is irrelevant. Indeed, a teacher with his experience should be the best equipped to handle additional challenges. Third, the written reprimand was the result of an investigation finding that Massa actually violated a testing procedure. Surely, there was reason for the investigation. Fourth, Principal Roos followed the School Board's procedure and statutory law when she reported the choking incidents. Most, if not all schools, would offer that student safety is a primary concern. The same concern for safety also justifies the investigation into the bathroom incident and the corresponding denial of summer employment as a result. Accordingly, the Court finds that there were legitimate nondiscriminatory reasons for all alleged adverse employment actions against Massa.

### 3. *Pretext*

Because the School Board sufficiently articulates legitimate nondiscriminatory reasons for all alleged adverse employment actions, the burden shifts to Massa to prove that the legitimate reasons offered are mere pretext. *See Young*, 135 S. Ct. at 1345. "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where [] the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.").

Here, the Court agrees with the Report and Recommendation that Massa has provided sufficient evidence for a reasonable juror to find that at least one of the School Board's legitimate nondiscriminatory reasons was pretext for retaliation. There are at least three strong pieces of evidence. First, construing the facts in the light most favorable to Massa, Principal Roos told Massa: "You know why you did not get any highly effective ratings; you know what's been going on." A reasonable juror could conclude that this evidences a retaliatory motive. Second, Principal Roos claimed that she had made a mistake on the evaluation, and that her computer must have been hacked. A reasonable juror may conclude that this after-the-fact, unsubstantiated alternative explanation may be evidence of retaliatory motive. Third, Massa disclosed to Principal Roos in October 2014 that he was taking a student with him into the bathroom. A reasonable juror could conclude that Principal Roos' lack of concern in 2014 and subsequent choice to investigate potential sexual impropriety only *after* Massa engaged in more protected conduct is sufficient evidence of pretext.

Further, although admittedly weaker evidence, a reasonable juror could conclude, in light of the circumstances as a whole, that Principal Roos' encounter with Massa in the hallway when Massa was prepared to testify in another administrative hearing strengthens proof of retaliatory intent for later actions. Also, Principal Roos' earlier angry encounter with Massa just days after finding out about the allegations against him—and only weeks before Massa's sequence of alleged adverse actions began—provides more evidence. Indeed, the temporal proximity of the protected activity to the circumstantial evidence and the adverse actions certainly bolster Massa's position.

Massa has provided sufficient evidence for a reasonable juror to find pretext, and to conclude that Massa was actually retaliated against. Accordingly, Massa survives summary judgment on this ground. But, that is only half of the battle. Massa must also provide sufficient evidence to hold the School Board liable for that retaliation.

B.    **School Board's Liability for Retaliation**

"It is well established that a municipality may be held liable under [Section] 1983 only when the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of *respondeat superior*." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991). Thus, "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986)). "A 'municipal act' is not, however, limited to decisions made by the city's official legislative body or in written agreements. City policy also may be implicated by the acts of individual policymaking officials or by pervasive city custom." *Id.* at 1480.

There are three ways to implicate municipal liability in a Section 1983 action: (1) an official policy; (2) a decision of a final policymaker; or (3) a municipal custom or practice. *See*

-15-

*Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1188 (11th Cir. 2004); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978) ("[L]ocal governments, like every other [Section] 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited *pursuant to governmental 'custom' even though such a custom has not received formal approval* through the body's official decision making channels.") (emphasis added); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997) ("[A] plaintiff seeking to impose liability on a municipality under [Section] 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."). Here, of course, Massa alleges no official School Board policy of retaliation. Nor does he allege that a final policymaker made a decision to retaliate against him. Rather, Massa argues that the School Board has a custom or practice of retaliating against employees who exercise First Amendment rights. Thus, the only issue before the Court is whether Massa has created a genuine issue of material fact as to whether the School Board has a custom or practice of unconstitutional retaliation.

1. ***Custom or Practice***

"To prove Section 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brown*, 923 F.2d at 1481 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Such a widespread practice is "deemed authorized by policymaking officials because they must have known about it but failed to stop it." *Id.* The constitutional deprivations that constitute widespread abuse to notify the supervising official—in this case the School Board—of an unconstitutional custom must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). A

municipality's failure to correct the constitutionally offensive actions of its employees may rise to the level of a "custom or policy" if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct. *See Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987). Thus, to survive summary judgment, Massa must demonstrate a genuine dispute as to the existence of a custom or policy which caused a deprivation of his federal rights, and that the custom was so widespread that the School Board, although aware, acquiesced. *See Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1171 (11th Cir. 1995).

The School Board argues that none of the testimony of Massa's nine witnesses includes actions taken against them by the School Board that were actually deemed unconstitutional. Massa responds that no court could ever find a First Amendment retaliation violation against a municipal entity if it required a prior finding of retaliation. Neither party is fully correct. Generally, meritless claims should not be considered when analyzing an unofficial custom or practice. *See Brooks*, 813 F.2d at 1193. But, plaintiffs are not required to show that past retaliatory actions were actually deemed unconstitutional. Once a claim is deemed meritless it should be excluded from consideration. But, there are many scenarios where the merits of the underlying retaliation claim are never determined. For example, a retaliatory claim could settle, like with Ramirez in *Fernandez*. Or, a retaliatory claim may fail because liability cannot be imputed to the municipal entity, like is being argued here. Or, an official action may never be pursued and so no determination is ever made. But, none of these situations preclude the underlying alleged retaliation from being considered as proof of an unofficial custom or practice.

Here, Massa points to six incidents of alleged retaliation over a 10-year period, involving nine witnesses. As more fully explained below, Massa has provided sufficient evidence of a custom or policy of unconstitutional retaliation to survive summary judgment. However, the

Court will permit testimony only from witnesses whose retaliation allegations meet two criteria: (1) the allegations have not been found to lack merit; and (2) the School Board must have had notice. The reasoning is simple. Allegations determined to be unsubstantiated or allegations unknown to the School Board cannot support a custom of policy of unconstitutional retaliation.

After applying these two criteria, the Court considers only three of the nine witnesses' allegations as proof of a custom or practice. But, even with only three witnesses, Massa has provided sufficient evidence to defeat summary judgment and submit the issue to a jury. However, the other six witnesses' testimony will be excluded. The chart attached as Exhibit A summarizes the circumstances of each witness, as more fully explained below.

a.     Alleged Retaliation for Charter School Advocacy (2012)

In the fall of 2011, then-Assistant Principal Cristobol approached then-Principal Dr. Fernandez with an idea to convert Neva King Cooper to a charter school. Dr. Fernandez recruited three employees to research the idea, including Cristobol and Ramirez. In February 2012, Dr. Fernandez and Cristobol presented the charter school conversion proposal to the school's Excellence in Education Advisory Committee, comprised of faculty, parents, and community members. The Committee decided to initiate a parent and faculty vote on the issue. After meeting with the Committee, Dr. Fernandez shared the news with his supervisor, Will Gordillo, who was the district director for the Department of Special Education. Gordillo warned Dr. Fernandez that "repercussions would follow." During the next few months, Gordillo and other directors visited Neva King Cooper. Eventually, in May 2012, the School District transferred Dr. Fernandez and Cristobol from Neva King Cooper to other locations to perform menial jobs, allegedly for attempting to coerce employees at Neva King Cooper into voting for conversion. Ramirez also was transferred to a different office for researching the conversion issue on school time. In June 2013, the Department of Administrative Hearings issued a

recommended order that found the School District had retaliated against Dr. Fernandez and Cristobol for their charter school conversion advocacy. Ultimately, the Florida Department of Education adopted the findings of the administrative judge and found that the School Board had retaliated against its employees.

Dr. Fernandez, Cristobol, and Ramirez also brought First Amendment retaliation claims against the School Board in federal court. *See Fernandez v. Sch. Bd. of Miami-Dade Cnty., Fla.*, No. 15-21915, 2017 WL 2537281 (S.D. Fla. June 12, 2017) (Gayles, J.). However, the School Board was granted summary judgment as to Dr. Fernandez and Cristobol because the court found that the charter school conversion activities were not protected "citizen speech," but rather unprotected "employee speech." *Id.* at *5. Ramirez settled before trial.

Based on these events, Ramirez's testimony can be considered, but Dr. Fernandez's and Cristobol's cannot. Although an administrative judge found that the School Board retaliated against the three employees in some respect, the judge made no findings that free speech rights were implicated. But later, a court in this District determined that Dr. Fernandez's and Cristobol's *First Amendment* retaliation claims lacked merit. *See id.* Because Massa's claims against the School Board are for First Amendment retaliation, Dr. Fernandez's and Cristobol's meritless First Amendment retaliation claims do nothing to support Massa's assertion that the School Board has a custom or policy of unconstitutional First Amendment retaliation.

On the other hand, Ramirez's First Amendment retaliation claims were not found to be meritless. Rather, the School Board settled his claims. Because the School Board had notice of Ramirez's First Amendment retaliation claims, and those claims have not been found to lack merit, Ramirez's testimony can be considered as evidence that the School Board has a custom or policy of unconstitutional retaliation.

b.   Alleged Retaliation for Reporting Grade Inflation

In March 2013, Principal Roos threatened Morales with a poor evaluation unless

Morales' students achieved higher test scores on the Florida Alternate Assessment. Principal

Roos directed Morales to retest students and award higher scores, and also directed Morales to

give the best interpretations to ambiguous student hand gestures during testing. Uncomfortable,

Morales approached Massa with her concerns. Morales wrote a letter to regional director

Steffond Cone, and Massa delivered the letter. Other teachers approached Massa with similar

concerns. After talking with the concerned teachers, in December 2013, Massa and Diaz wrote

to Commissioner Stewart regarding Principal Roos' alleged pressure to inflate grades. In

February 2014, the Florida Department of Education Director of Investigations suggested that

Massa and Diaz file a whistleblower complaint with Superintendent Carvalho. Later that month,

Massa and Diaz filed a written complaint with Florida's Office of the Inspector General, and

forwarded a copy of the complaint to Superintendent Carvalho. The proceedings eventually led

to investigations of Principal Roos by the County Office of the Inspector General.

(1)   *Retaliation Against Morales (2014)*

More than one year after Morales wrote the initial letter to regional director Cone, in May

2014, a paraprofessional assigned to Morales failed to notice that a wheelchair-bound student in

her care was left behind in an aisle during a field trip to Wal-Mart. The student was recovered

unharmed after 20 minutes. Superintendent Carvalho recommended dismissing Morales, and the

Board voted to terminate her in September 2014. Morales appealed her termination, and the

Department of Administrative Hearings overturned the discharge.

Morales' claims have not been found to lack merit, but there is no evidence that the

School Board had any notice of a claim for retaliation. At no time during Morales' defense of

her termination did she assert retaliation. And in her deposition testimony in this case, she stated

that she did not know if she had been retaliated against. Although Superintendent Carvalho and the School Board knew of the investigation into Principal Roos which arguably can be traced to Morales' initial concerns, and the School Board voted on Morales' termination for an unrelated matter more than one year later, the evidence does not support a nexus between the two events, especially considering Morales' own deposition testimony. Because there is no evidence to show the School Board had notice of any retaliatory claim by Morales, Morales' testimony cannot be considered as evidence that the School Board has a custom or policy of unconstitutional retaliation.

(2)    <em>Retaliation Against Diaz (2015)</em>

Massa proffers evidence that just one day after Principal Roos saw Diaz in the hallway attending Morales' hearing as a witness, and after Diaz had coauthored with Massa the complaint against Principal Roos, Principal Roos issued an "unsatisfactory" observation to Diaz. But, Massa admits there is no evidence that the School Board knew or should have known of the alleged retaliatory action. Indeed, the alleged retaliatory action occurred at the same time as the alleged retaliatory action against Massa. As such, Diaz's testimony cannot be considered as evidence that the School Board has a custom or policy of unconstitutional retaliation.

c.    <u>Alleged Retaliation for Reporting Teacher-Assisted Cheating (2013)</u>

In April 2013, Trevor Colestock reported to the County Office of Inspector General that teachers at Norland Senior High School had assisted students in cheating on standardized tests. Following an investigation, the allegations were substantiated, and in September 2013, Colestock published articles about the scandal. In October 2013, Chief Human Capital Officer Enid Weisman suggested that Colestock take a voluntary transfer, but Colestock declined. Two weeks later, Colestock was removed from Norland by school police. In May 2014, his night class was taken away and his students were transferred to another teacher. He has since not been permitted

to teach summer school. Colestock sued the School Board in state court for retaliation, and is awaiting trial.

Given the nature of the pending state-court claims, the School Board has notice of Colestock's claims. But, the School Board argues to exclude Colestock's allegations from consideration because the merits have not yet been determined. But, as explained above, Colestock's claims will only be excluded if they are found to lack merit. As long as the state-court claims are pending, Colestock's testimony can be considered as evidence that the School Board has a custom or policy of unconstitutional retaliation. Of course, if the state court determines that Colestock's claims are meritless before this trial begins, Colestock's testimony will no longer be considered.

      d.    Alleged Retaliation for Opposing Sexual Preference Discrimination (2009)

In March 2008, teacher Justin Koren assisted a school security guard with writing a sexual preference harassment charge against a school principal. In March 2009, Koren was involuntarily removed from his classroom, escorted out of the school, and transferred to a distant school following a sequence of allegedly retaliatory events. A lawsuit followed. Eventually, in 2012, the Florida Supreme Court found that the alleged retaliatory events, including confrontation, half-hearted recommendations, false charges of job abandonment, false charges and investigation of password misuse, and involuntary transfer, were sufficient to *state a claim* for retaliation. However, the retaliation claims did not survive summary judgment. Because the claims were determined to lack merit, Koren's testimony cannot be considered as evidence that the School Board has a custom or policy of unconstitutional retaliation.[4]

---

[4] There is no indication in the state court's order granting partial summary judgment that the state retaliation claims failed as a matter of law solely because Koren failed to establish an unofficial custom or policy, but otherwise had merit.

e.     <u>Alleged Retaliation for Questioning Grant Money (2007)</u>

In 2007, teacher Dr. Patrick Williams persistently questioned the Excellence in Education Advisory Committee about what had happened to $6 million in grant money. Unsatisfied with the response, he put his request in writing to the principal, who forwarded it to the regional superintendent. Still unsatisfied with the response, Dr. Williams emailed and was later invited to meet with a regional director. When Dr. Williams left for the meeting, he was accused of failing to sign out when leaving his school, even though he allegedly received permission from his assistant principal. The next day, Dr. Williams was escorted from his school by school police and accused of sending harassing emails. He was reassigned to a regional office. He eventually returned to a classroom in another school, but lost extra pay stipends.

The merits of Dr. Williams' allegations are unknown, so his testimony cannot be excluded as meritless. Further, taking the facts in the light most favorable to Massa, there is sufficient evidence for a reasonable juror to infer that the School Board knew or should have known of the alleged retaliatory action because Dr. Williams' situation was reported in two newspaper articles that may have been delivered to the Superintendent and School Board members. Because Dr. Williams' allegations have not been found to lack merit, and the Board may have been on notice, his testimony can be considered as evidence that the School Board has a custom or policy of unconstitutional retaliation.

f.     <u>Alleged Retaliation for Speaking on the Out-Flow of Teachers (2006)</u>

In 2006, teacher Shawn Beightol was involuntarily removed from his school after sending an email to teachers, administrators and School Board members describing an out-flow of teachers from Miami-Dade to nearby counties where salaries had edged ahead. He was transferred to a school bus garage, and his night class was taken away. However, even assuming that all of Beightol's testimony is true and that he was the victim of retaliatory action, Massa has

provided insufficient evidence that the School Board knew or should have known of the alleged retaliatory action. Thus, Beightol's testimony cannot be considered as evidence that the School Board has a custom or policy of unconstitutional retaliation.

### g. Summary of Permissible Testimony

To recap, the Court finds that even when the evidence is evaluated in the light most favorable to Massa, the allegations of only three of the nine witnesses—Ramirez, Colestock, and Williams—meet the two necessary criteria: (1) the allegations of retaliation have not been found to lack merit; and (2) the School Board had notice of the allegations. Accordingly, only these three witnesses' testimony is considered as evidence that the School Board has a custom or policy of unconstitutional retaliation. Although the Court is skeptical that allegations from three witnesses dating back a decade qualify as a custom or policy as defined by the Eleventh Circuit, the question is best suited for a jury. Indeed, the jury must determine whether the testimony from these three witnesses[5] supports a finding of "widespread abuse" that is obvious, flagrant, rampant, and of continued duration, or deliberate indifference by the School Board. *See Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1360 (S.D. Fla. 1999) (Gold, J.) (isolated and dispersed episodes, even if they were retaliatory, are insufficient to substantiate the existence of a widespread custom violative of Section 1983). Of course, the Court may entertain a Rule 50 motion for judgment as a matter of law at trial as appropriate. Accordingly, the School Board's motion for summary judgment is **DENIED**, but the permissible testimony to prove custom or policy is limited to the three witnesses discussed above.

---

[5] The three witnesses may turn to two depending on the outcome of Colestock's state-court litigation, which is currently set for trial before this case.

## IV.    CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that the objections to the Report and Recommendation are **OVERRULED**; the Report and Recommendation is **ADOPTED** in its result; and the School Board's Motion for Summary Judgment is **DENIED.**  It is further

**ADJUDGED** that the School Board's Motion in Limine is **GRANTED IN PART** and **DENIED IN PART.**  The testimony of the following six witnesses as it relates to proving a custom or policy of unconstitutional retaliation is excluded from trial:  (1) Dr. Alberto Fernandez; (2) Henny Cristobal; (3) Luz Morales; (4) Tebelio Diaz; (5) Justin Koren; and (6) Shawn Beightol.  The testimony of the remaining three witnesses is permitted as of the date of this order:  (1) Patricia Ramirez; (2) Trevor Colestock; and (3) Dr. Patrick Williams.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ___ of January 2018.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record